IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| INTERSTATE AERIALS, LLC, | Civil No. 07-3846 |
| Plaintiff, | |
| v. | |
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, AL HORGAN GENERAL CONTRACTOR, INC., ERIE INSURANCE GROUP, and FICTITIOUS INSURANCE COMPANIES 1-10, | **OPINION** |
| Defendants. | |

**APPEARANCES:**

Mark B. Shoemaker, Esq.
Ward Shoemaker LLC
36 Euclid Street
P.O. Box 685
Woodbury, NJ 08096
    Counsel for Plaintiff Interstate
    Aerials, LLC

Richard S. Nichols, Esq.
Gennet, Kallmann, Antin & Robinson, P.C.
6 Campus Drive
Parsippany, NJ 07054
    Counsel for Defendant Great American
    Insurance Company of New York

Philip D. Priore, Esq.
Anna M. Darpino, Esq.
McCormick & Priore, P.C.
4 Penn Center, Suite 800
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
    Counsel for Defendant Al Horgan
    General Contractor, Inc.

Frances Anne Lettieri, Esq.
Christopher J. Tellner, Esq.
Post & Schell, P.C.
Four Penn Center
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
     Counsel for Defendant Erie Insurance Exchange

**DONIO, MAGISTRATE JUDGE:**

Presently pending before the Court are the cross-motions for summary judgment filed by Plaintiff, Interstate Aerials, LLC (hereinafter, "Interstate Aerials") [Doc. No. 40], and by Defendant Great American Insurance Company of New York (hereinafter, "Great American")[Doc. No. 36] regarding an insurance policy issued by Great American.[1]  For the reasons set forth below, the Court grants Great American's motion [Doc. No. 36] for summary judgment with respect to the claims by Interstate Aerials and denies Interstate Aerials' cross-motion [Doc. No. 40].

This declaratory judgment action relates to a policy of property insurance issued by Great American to Interstate Aerials for "Commercial Inland Marine" coverage for the period March 10, 2005 to March 10, 2006.  (See Br. in Supp. of Cross Mot. for Summ. J. (hereinafter, "Pl. Br.") Ex. E.)  Subject matter jurisdiction is premised upon 28 U.S.C. § 1332 and is based upon diversity of citizenship of the parties and the amount in controversy allegedly exceeding $75,000.

---

1.  The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1), FED. R. CIV. P. 73(b), and Rule 73.1 of the Local Civil Rules for the United States District Court, District of New Jersey.

2

The insurance issue in this action relates to an insurance claim filed by Interstate Aerials on December 7, 2005 with Great American seeking reimbursement for damages sustained to an aerial lift[2] owned by Interstate Aerials and leased by Al Horgan General Contractor (hereinafter, "Horgan") on November 16, 2005. (See Great American's Statement of Material Facts (hereinafter, "Great American SMF") ¶¶ 3, 4, Exs. B, D.) The parties do not dispute that the lift was damaged in an accident on November 17, 2005 while being operated by an employee of Horgan's subcontractor.[3] (Id. at ¶¶ 3, 4; Statement of Material Facts in Supp. of Partial Opp'n of Def., Al Horgan Gen. Contractor, to Pl.'s Cross Mot. for Summ. J. ¶¶ 2, 3.) By letter dated December 29, 2005, Great American advised Interstate Aerials that it was disclaiming coverage for the damage to the lift on the ground that Interstate Aerials failed to comply with two conditions precedent set forth in the insurance policy. (Great American SMF, Ex. D.) Interstate Aerials, however, maintains that it "complied with all terms and conditions of coverage" and that Great American "has issued an invalid disclaimer

---

2. The parties refer to the equipment at issue as a boom lift or an aerial lift. For purposes of this Opinion, the Court shall refer to the equipment as a lift.

3. Great American asserts that a subcontractor of Horgan was operating the lift to caulk the outside of windows on the sixth floor of a building and that the lift "tipped over, killing its operator and destroying the boom lift when it crashed to the ground." (Great American's Br. of Law in Supp. of Not. of Mot. for Summ. J. 3.) An action for the wrongful death of the lift operator was filed in the Court of Common Pleas, Philadelphia County, Pennsylvania under Case No. 3197. (Id. at 4.)

of coverage."   (Am. Compl. 4, ¶ 16.)   Interstate Aerials thus instituted the present litigation seeking, <u>inter alia</u>, a "finding of first party property coverage under the policy issued by Great American . . . to the Plaintiff."   (<u>Id.</u> at 5, ¶ 1.)

Great American and Interstate Aerials now cross-move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.   The Court heard oral argument on the motions on July 24, 2008 and reserved decision at that time.[4]   Thereafter, the parties advised the Court that all claims in this action have been settled other than the declaratory judgment action and, therefore, the Court shall address the cross-motions for summary judgment on the coverage issue only.   A court may grant summary judgment when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); <u>see</u> <u>Lang v. New York Life Ins. Co.</u>, 721 F.2d 118, 119 (3d Cir. 1983).   A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law."   <u>See</u> <u>id.</u>   Disputes over irrelevant or

---

4.   The Court notes the following appearances of counsel at oral argument: Mark B. Shoemaker, Esq. on behalf of Interstate Aerials, Richard S. Nichols, Esq. on behalf of Great American, Philip D. Priore, Esq. on behalf of Horgan, and Christopher J. Tellner, Esq. on behalf of Erie Insurance Exchange.

unnecessary facts will not preclude a grant of summary judgment. Id.

The moving party bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once a moving party satisfies its burden, the party opposing summary judgment must then "'set forth specific facts showing that there is a genuine issue for trial.'" Liberty Lobby, 477 U.S. at 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (quoting Fed. R. Civ. P. 56(e)). A non-moving party must do more than rely only "'upon bare assertions, conclusory allegations or suspicions.'" Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010, 106 S. Ct. 537, 88 L. Ed. 2d 467 (1985) (quotation omitted); see Liberty Lobby, 477 U.S. at 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202. Thus, if the non-moving party's evidence is a mere "scintilla" or is "not significantly probative," the court may grant summary judgment in favor of the moving party. Liberty Lobby, 477 U.S. at 249, 251, 106 S. Ct. 2505, 91 L. Ed. 2d 202.

The standard for granting summary judgment is the same when cross-motions for summary judgment are filed. See Appelmans v. City of Philadelphia, 826 F.2d 214, 216 (3d Cir. 1987). Cross-motions for summary judgment "'are no more than a claim by each

5

side that it alone is entitled to summary judgment[.]'"
Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d 555,
560 (3d Cir. 2001) (quoting Rains v. Cascade Indus., Inc., 402 F.2d
241, 245 (3d Cir. 1968)).  As noted in F.A.R. Liquidating Corp. v.
Brownell:

> "The fact that both parties make motions for
> summary judgment, and each contends in support
> of his respective motion that no genuine issue
> of fact exists, does not require the Court to
> rule that no fact issue exists. Each, in
> support of his own motion, may be willing to
> concede certain contentions of his opponent,
> which concession, however, is only for the
> purpose of the pending motion. If the motion
> is overruled, the concession is no longer
> effective."

F.A.R. Liquidating Corp. v. Brownell, 209 F.2d 375, 380 n.4 (3d
Cir. 1954) (quoting Begnaud v. White, 170 F.2d 323, 327 (6th Cir.
1948)).  If upon review of cross-motions for summary judgment the
Court finds no genuine issue of material fact, then judgment should
be entered "in favor of the party deserving judgment in light of
the law and undisputed facts."  Iberia Foods Corp. v. Romeo, 150
F.3d 298, 302 (3d Cir. 1998)(citing Ciarlante v. Brown & Williamson
Tobacco Corp., 143 F.3d 139, 145-46 (3d Cir. 1998)).

In the present case, the parties do not dispute that under the
Great American insurance policy at issue, coverage for leased
property is provided by way of an endorsement titled "LEASED
PROPERTY - CONTINGENT INTEREST FORM," which is identified as Form
F 930.  (Pl. Br. 7, Ex. E; Great American Br. of Law in Supp. of
Not. of Mot. for Summ. J. (hereinafter, "Great American Br.") 2.)

6

The Form F 930 expressly provides on Page 1 under the title "DESCRIPTION OF PROPERTY COVERED" the following language: "Personal property consisting principally of EQUIPMENT USUAL TO AREIAL [sic] LIFT OPERATION."  (Id.; see also Great American May 22, 2008 Letter Reply Br. (hereinafter "Great American Reply Br.") Ex. 3.)  Page 1 of the Form F 930 also sets forth the following in the "LIMITS OF LIABILITY" section:

> LIMITS OF LIABILITY:
>
> A.    Property leased to others.
>       $200,000. in the custody of any one lessee not specified
>       below. . . .

(Great American Reply Br., Ex. 3 at 1.)  Likewise, Page 2 of the Form F 930 states that leased property is covered under the insurance policy.  Specifically, Page 2 of the Form 930 provides as follows:

> A.    PROPERTY COVERED
>
>       This policy insures personal property of the insured, as described in the Schedule, which is:
>
>       (a)   leased or rented to others; and
>
>       (b)   intended for lease or rental to others.
>
>       Such property is covered wherever located within the continental limits of the United States (excluding Alaska) and Canada including while temporarily located on premises of the Insured for repairs, adjustment or redistribution.

(Id. at 2.)

There is no dispute that the Form F 930 provides coverage for leased property.  Rather, the dispute relates to whether Interstate

7

Aerials was required to satisfy certain contingencies on Page 2 of the Form F 930, and, if so, whether those contingencies have been met.  The contingencies are set forth in Section E on Page 2 of the Form F 930 under the heading "CONTINGENT COVERAGE."  This provision states:

> E.   CONTINGENT COVERAGE
>
>    When property is in the custody of lessee(s), this insurance applies only if the Insured has obtained:
>
>    1.   A signed lease/rental agreement which requires the lessee to: (a) be fully responsible for all loss or damage; (b) provide insurance, no less broad as respects perils than that provided by this policy, covering the property to be leased; and
>
>    2.   Evidence of such physical damage insurance, which names the Insured (lessor) as loss payee, when the value of property leased to any one customer exceeds $50,000.

(Id.)  It is this provision, Section E, upon which Great American disclaimed coverage for the lift.  Specifically, Great American denied coverage based upon its finding that Interstate Aerials did not obtain a signed rental agreement from Horgan, the lessee of the lift, and did not provide evidence of physical damage insurance naming Interstate Aerials as a loss payee.  (Great American SMF, Ex. D at 2.)  Interstate Aerials asserts that this clause is not enforceable because it is a "technicality buried at the end of voluminous insuring documents in a manner that is inconsistent with the coverage indicated on the Declarations page," and,

8

consequently, the conditions for coverage were not within the reasonable expectations of the insured, i.e., Interstate Aerials. (Pl. Br. 10.)

Under New Jersey law, it is well settled that insurance policies are contracts of adhesion and, as such, are to be afforded "special scrutiny." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 594-95, 775 A.2d 1262 (2001) (citing Gibson v. Callaghan, 158 N.J. 662, 669, 730 A.2d 1278 (1999)).[5] When there is ambiguity in the policy of insurance, the policy should be interpreted "to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." Id. at 595, 775 A.2d 1262 (citing Gibson, 158 N.J. at 671, 730 A.2d 1278). An ambiguity exists when "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247, 405 A.2d 788 (1979). However, words of an insurance policy "are to be given their plain, ordinary meaning" and, in the absence of ambiguity, "'courts should not write for the insured a better policy of insurance than the one purchased.'" Zacarias, 168 N.J. at 595, 775 A.2d 1262 (quoting Gibson, 158 N.J. at 670, 730 A.2d 1278).

In Zacarias, the New Jersey Supreme Court held that in

---

5. Interstate Aerials and Great American both contend that New Jersey law is controlling on the issues presented on the parties' cross-motions, and the Court shall apply New Jersey law to the coverage issues.

enforcing an insurance policy, a court should only "depart from the literal text" and apply the reasonable expectations doctrine "if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend." Zacarias, 168 N.J. at 601, 775 A.2d 1262 (citations omitted).  Moreover, "the plain terms of the contract will be enforced if the 'entangled and professional interpretation of an insurance underwriter is [not] pitted against that of an average purchaser of insurance, or the provision is not so 'confusing that the average policyholder cannot make out the boundaries of coverage.'"  Id. (citations omitted).

In this case, Interstate Aerials asserts that its "reasonable expectation" was to have unconditional coverage in the amount of $200,000 for property leased to others, notwithstanding the contingency language in the Form F 930, because such language is not contained on the first page of the form.  (Pl. Br. 8-10.)  In support of its argument, Interstate Aerials cites Lehrhoff v. Aetna Ca. Ins. Co., 271 N.J. Super. 340, 347, 638 A.2d 889 (App. Div. 1994), for the proposition that the Declarations Page of an insurance contract "'must be deemed to define coverage and the insured's reasonable expectation of coverage.'"  (Pl. Br. 8) (quoting Lehrhoff, 271 N.J. Super. at 347, 638 A.2d 889).  Interstate Aerials urges that the "Contingent Coverage" clause on Page 2 of the Form F 930 is merely "a technicality buried at the

10

end of voluminous insuring documents in a manner that is inconsistent with the coverage indicated on the Declarations page." (Id. at 10.) In this regard, Interstate Aerials contends that "a review of the [Form F 930] would provide absolutely no indication to the insured of any . . . contingency." (Id. at 7.) Great American argues, however, that the doctrine of reasonable expectations does not apply in this case because the language of the policy is unambiguous. (Great American Reply Br. 7.) Moreover, Great American asserts that summary judgment is appropriate because the undisputed facts demonstrate that Interstate Aerials, under the plain and unambiguous terms of the insurance policy, failed to satisfy both of the conditions precedent set forth in the Form F 930. (Great American Br. 7-8.)

The Court finds that the terms of the Great American insurance policy are clear and unambiguous, and do not warrant "depart[ure] from the literal text." Zacarias, 168 N.J. at 601, 775 A.2d 1262. The Form F 930 contains plain, easily understandable language that specifically requires as conditions for coverage of property leased to others that the insured enter into a signed lease/rental agreement and provide evidence of physical damage insurance naming the insured as a loss payee. (Great American Reply Br., Ex. 3 at 2.) While Page 1 of the Form F 930 sets forth the general coverage under the policy, indicating that coverage up to $200,000 is available for property leased to others, it also expressly states that it is the first page of a three-page document. (Id. at 1.)

11

The language on Page 2 at Section E, entitled "CONTINGENT COVERAGE," expressly states that coverage for property leased to others is contingent upon the satisfaction of the conditions described therein. (Id. at 2.) This language, including the two contingency provisions, in the Court's view does not require an "entangled and professional interpretation to be understood." Zacarias, 168 N.J. at 601, 775 A.2d 1262. Nor is the phrasing of the policy "so confusing that the average policyholder cannot make out the boundaries of coverage." Weedo, 81 N.J. at 247, 405 A.2d 788. Moreover, the Form F 930 is not the type of "overly technical" policy referred to in Zacarias. The Form F 930 does not "contain[] hidden pitfalls," can be understood "without employing subtle or legalistic distinctions," is not "obscured by fine print," and does not require "strenuous study to comprehend." Zacarias, 168 N.J. at 601, 775 A.2d 1262 (citations omitted). Accordingly, the Court rejects Interstate Aerials' argument that the Form F 930 is ambiguous or contradictory.[6]

_____

6. For this reason, Gerhardt v. Continental Ins. Co., 48 N.J. 291, 225 A.2d 328 (1966), cited by Interstate Aerials, is distinguishable. In Gerhardt, the plaintiff purchased a homeowner's policy that excluded a worker's compensation claim by a residence employee. 48 N.J. at 292, 225 A.2d 328. The Court concluded that the plaintiff's reasonable expectation of coverage for a worker's compensation claim should be fulfilled. Id. at 300, 225 A.2d 328. The Court noted that "the exclusionary clause in the policy before us was neither conspicuous nor plain and clear. . . . [O]nly a very hardy soul would have plowed through all of the fine print here in an effort to understand the many terms and conditions. . . . As far as the plaintiff here was concerned, nowhere was there any straightforward and unconditional statement that the policy was not intended to protect the insured against a workmen's compensation claim[.]"

12

Interstate Aerials urges a contrary conclusion, arguing that the policy's "Declarations Page" does not expressly state that coverage for property leased to others is contingent upon the satisfaction of certain conditions precedent.  The Court notes that New Jersey courts have recognized the importance of a single declarations page in an insurance policy and its role in defining the reasonable expectations of an insured.  In Lehrhoff, relied upon by Interstate Aerials, the wording of an insurance policy's declarations page was determinative.  In that case, the Appellate Division concluded that the reasonable expectations of the insured, formed on the basis of the declarations page, could not be defeated by the boilerplate language contained elsewhere in the policy. Lehrhoff, 271 N.J. Super. at 347, 638 A.2d 889.  However, in Zacarias, the New Jersey Supreme Court declined to interpret Lehrhoff as requiring an insurer to include exclusions on a declarations page in all cases.  Zacarias, 168 N.J. at 602, 775 A.2d at 1269.  The Court in Zacarias found that in the case before it, there was no ambiguity, inconsistency, or contradiction between the declarations page and the body of the insurance policy at issue.  Zacarias, 168 N.J. at 602, 775 A.2d 1262.  Rather, the declarations page "alert[ed] the insured that the coverages and limits of liability are subject to the provisions of the policy,"

_____

Id. at 298-99, 225 A.2d 328.  In the present case, unlike Gerhardt, the contingency clause is not hidden among fine print or layers of cross-references, nor does it require "plow[ing] through" fine print to understand the terms and conditions.

13

and the exclusionary provision in the policy was "written in direct and ordinary terms." Id. at 602-03, 775 A.2d 1262.  As noted in Zacarias, "an insurance contract is not per se ambiguous because its declarations sheet, definition section, and exclusion provisions are separately presented." Id. at 603, 775 A.2d 1262.

The Court does not find Lehrhoff controlling under the circumstances presented in this case.  First, the document relied upon by Interstate Aerials for purposes of defining its reasonable expectations -- the Form F 930 -- is not the Declarations Page for the Great American policy at issue, but is rather an Endorsement.[7] (See Pl. Br. 8.)  In addition, the Declarations Page, Form CM 76 04, in bold and capitalized font, clearly directs the policy holder to certain forms and endorsements made a part of the policy.  (Pl. Br., Ex. E.)  The specific language is as follows: "FORMS AND ENDORSEMENTS applicable to all Coverage Parts and made part of this policy at time of issue are listed on the attached Forms and Endorsements Schedule CM 88 01 (11 85)."  (Id.)  The attached Schedule CM 88 01 is a BusinessPro FORMS AND ENDORSEMENT SCHEDULE, which lists the Form F 930 -- the Endorsement titled "LEASED PROPERTY - CONTINGENT INTEREST FORM" -- as one of the forms and

---

7.  The Declarations Page for the policy at issue is an "EQUIPMENT DEALERS DECLARATIONS" form, identified as Form CM 76 04.  (Great American Reply Br., Ex. 1.)  This Declarations Page states that only the premises at "2188 Route 322, Woolwich Twp, NJ" are covered under the policy.  (Id.)  Interstate Aerials thus cannot assert that based on the Declarations Page it had a reasonable expectation of coverage for property leased to others, because the Declarations Page indicates that the insurance policy covered only the real property in Woolwich Township, New Jersey.

14

endorsements made part of the policy.  The Court finds that the cross-reference from the Declarations Page to the Form F 930 does not create ambiguity, inconsistency or contradiction, or create reasonable expectations that conflict with the text of the policy sufficient to invalidate the terms of the policy.  Cf. Zacarias, 168 N.J. at 603, 775 A.2d 1262 ("A rule of construction forcing insurers to avoid all cross-referencing in policies would require them to reprint the entire definition section on each page of the policy, or to define each term every time it is used.  That proliferation of fine print would itself demand strenuous study and run the risk of making insurance policies more difficult for the average insured to understand."); Continental Cas. Co. v. Gamble, No. Civ. A. 05-5189, 2007 WL 1657107, at *5 (D.N.J. June 5, 2007) ("[T]he Court determines that the Declarations Page is unambiguous in its reference to the Endorsement and does not alter the validity of the Policy and Endorsement. . . . [T]he Declarations Page clearly directs the policyholder to certain forms and endorsements made a part of the Policy by the use of bold and capitalized font. . . . The Court finds that this is sufficient, especially given that the Endorsement itself is written in such direct and ordinary terms.").  Consequently, the Court rejects Interstate Aerials' argument that as a result of the Declarations Page the Great American policy covers the loss at issue in this case, i.e., the lift leased to Horgan.

In addition, the Court rejects Interstate Aerials' argument

15

that Page 1 of the Form F 930 should be construed as a Declarations Page that alone defines the reasonable expectations of the insured. Even if the Court considers Page 1 of the Form F 930 as a Declarations Page, the form is unambiguous and is clearly a three-page document in which Page 2 expressly provides for exclusions and contingent coverage.  Interstate Aerials' argument disregards the property excluded, the perils excluded, and the contingent coverage provisions set forth on Page 2 of the form.  The Court finds no basis to disregard these provisions, which are clear and unambiguous, solely because they are not contained on the first page of the form.  Cf. Zacarias, 168 N.J. at 603, 775 A.2d 1262 (requiring insurer to place all terms on one page will result in the "proliferation of fine print" that will "demand strenuous study and run the risk of making insurance policies more difficult for the average insured to understand.").  The Court thus concludes that the first page in the Form F 930 -- the "LEASED PROPERTY - CONTINGENT INTEREST FORM" -- whether deemed a Declarations Page or an Endorsement, does not alone define the reasonable expectations of the insured.  Consequently, the Court finds that the "Contingent Coverage" clause is applicable in this case.

Having found that Interstate Aerials was required to comply with the "Contingent Coverage" clause in the Form F 930, the Court must now determine whether Interstate Aerials in fact complied with that provision.  With respect to the requirement that Interstate Aerials obtain a lease/rental agreement from the lessee of the

16

lift, Interstate Aerials "admits that it did not obtain such an agreement." (Pl. Br. 1.)  Interstate Aerials takes the position that it nonetheless "is in substantial compliance" with the requirement in that it "had a binding agreement with [the lessee,] Al Horgan General Contractor notwithstanding the failure to obtain a signature on the rental agreement." (Id.)  At oral argument, however, counsel for Interstate Aerials conceded that a genuine issue of material fact exists on the issue of contract formation with Horgan.[8]  The Court need not address in the context of the present motions whether a binding contract was formed between Interstate Aerials and Horgan or whether such contract, if any, would satisfy the "Contingent Coverage" provision in the policy, because Interstate Aerials does not dispute that it failed to comply with a second requirement for coverage, that is, obtaining evidence of physical damage insurance held by Horgan naming Interstate Aerials as loss payee. (Pl. Br. Ex. E; Great American Reply Br. Ex. 3.)  Great American asserts in its Statement of Material Facts that:

> To effectuate property insurance coverage as to its property leased to others, Interstate was required to have obtained evidence of property insurance held by the lessee (Horgan) covering the leased property.

(Great American SMF ¶ 2.)  Interstate Aerials does not address, let

---

8.  Horgan filed opposition to Interstate Aerials' motion for summary judgment on the issue of whether the contractor, Horgan, and Interstate Aerials had a binding rental agreement, asserting in part that a question of material fact existed on this issue.

17

alone dispute, Great American's assertion.[9]   Nor does Interstate
Aerials address, or dispute, Great American's assertion that
"Plaintiff did not obtain a Certificate of Insurance listing itself
as a loss payee, for the lift, under Horgan's insurance coverage,
in effect on November 17, 2005[.]"   (Id. at ¶ 6.)[10]   Because it is
undisputed that Interstate Aerials failed to obtain evidence of
physical damage insurance by Horgan naming Interstate Aerials as
loss payee on the date of the loss, the Court finds that Interstate
Aerials did not comply with at least one of the two conditions set
forth in Section E required to effectuate coverage for the lift.
In light of Interstate Aerials' failure to comply with such
condition, the Court concludes that under the policy issued by

---

9.   The Court notes that this second requirement under the
"Contingent Coverage" provision in Section E of the Form F 930,
requiring Interstate Aerials to provide evidence of physical
damage insurance naming Interstate Aerials as a loss payee,
applies only "when the value of property leased to any one
customer exceeds $50,000."   (Great American Reply Br. Ex. 3 at
2.)   Plaintiff filed suit in this Court asserting that the amount
in issue exceeded $75,000.   (Am. Compl. 2, ¶ 9.)   The Court
further notes that attached as Exhibit B to Great American's
motion for summary judgment is a document titled "Internal Claim
Notes Report," which reflects that the lift was worth between
$100,000 and $105,000.   (Great American Br., Ex. B.)   The Court
finds that Interstate Aerials was obligated to comply with this
second contingent condition set forth in Section E of the Form F
930.

10.   To the extent Interstate Aerials asserts that compliance
with this requirement should be excused because of an agreement
between Interstate Aerials and Horgan requiring Horgan to obtain
the requisite insurance coverage and supply a Certificate of
Insurance naming Interstate Aerials as loss payee (Pl. Br. 12),
any such agreement does not abrogate the express provision in the
Form F 930 that Interstate Aerials obtain evidence of the
property insurance "which names the Insured (lessor) as loss
payee[.]"   (Great American Reply Br., Ex. 3 at 2.)

18

Great American, Interstate Aerials is not entitled to coverage for the value of the lift.

Consequently, the Court shall grant Great American's motion for summary judgment as to the claims asserted by Interstate Aerials, and deny Interstate Aerials' cross-motion for summary judgment.

An appropriate Order shall be entered.

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

Dated: November 26, 2008

19